JUN 2 2 2026

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAMAL FRACTION,

　　　Plaintiff,

v. Case No. _____

SAINT PATRICK CENTER, a Missouri nonprofit corporation; CATHOLIC CHARITIES OF ST. LOUIS, a Missouri nonprofit corporation; STEPHANIE BLAKLEY, individually and in her official capacity; WALTER (last name unknown), individually and in his official capacity; and JAY (last name unknown), individually and in his official capacity,

　　　Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jamal Fraction ("Plaintiff"), proceeding pro se, for his Complaint against Defendants Saint Patrick Center ("SPC"), Catholic Charities of St. Louis ("Catholic Charities"), Stephanie Blakley, Walter (last name unknown), and Jay (last name unknown) (collectively, "Defendants"), states and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action arising from Defendants' retaliatory suspension of Plaintiff—an unhoused, transgender, pro se federal civil rights litigant—from essential meal services at Saint Patrick Center, a homeless services provider in St. Louis, Missouri, in direct response to Plaintiff's protected complaints of staff misconduct.

2. Plaintiff alleges that Defendants: (a) retaliated against him in violation of 42 U.S.C. § 1983 and the First Amendment for reporting staff misconduct; (b) retaliated against him in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (c) discriminated against him on the basis of sex and gender identity in violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; (d) violated HUD Equal Access and Non-Retaliation Standards, 24 C.F.R. § 5.110; (e) violated the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq.; (f) committed common-law

fraud and spoliation of evidence under Missouri law by fabricating and backdating a disciplinary instrument; and (g) deprived Plaintiff of procedural due process.

3. As a direct and proximate result of Defendants' conduct, Plaintiff—who is unhoused and has no alternative source of a consistent, hot, nutritious daily meal—was deprived of meal services for an indefinite period exceeding seven days as of the filing of this Complaint, suffered emotional distress, nutritional deprivation, and interference with his ongoing pro se federal civil rights litigation. Defendants' conduct further caused Plaintiff direct economic harm as the founder and sole proprietor of Urban Reparations LLC, a newly formed business enterprise, by diverting Plaintiff's time, physical capacity, and resources away from business development, outreach, and operations, and by impairing Plaintiff's ability to meet professional and funding-related obligations during the relevant period, resulting in lost business opportunities and lost prospective economic advantage.

4. Plaintiff seeks declaratory relief, preliminary and permanent injunctive relief, compensatory and punitive damages, nominal damages, costs, and such other relief as the Court deems just and proper.

## II. PARTIES

5. Plaintiff Jamal Fraction is a natural person and a resident of St. Louis, Missouri. Plaintiff is a legally recognized transgender man—legally and socially transitioned—whose male gender identity is recognized under Missouri law. Plaintiff is a qualified individual with disabilities within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12102, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 705(20). Plaintiff has been diagnosed with hip dysplasia, a physical impairment that substantially limits major life activities including walking, standing, and mobility, and bipolar disorder, a mental impairment that substantially limits major life activities including brain function, concentration, and regulation of mood and energy. Despite these impairments, Plaintiff is able to participate in and benefit from SPC's programs with or without reasonable accommodation and therefore qualifies for protection under the ADA and Section 504. Plaintiff is currently unhoused and accesses public library computer resources to conduct his affairs, including ongoing pro se federal civil rights litigation pending in this District. Notwithstanding his unhoused status, Plaintiff is a new business owner: the founder of Urban Reparations LLC, a Missouri organization focused on workforce development, structured support services, and personal leadership development for system-impacted adults. Plaintiff's ability to operate and build Urban Reparations LLC depends directly on his daily subsistence, his access to stable services, and his physical and economic capacity to conduct

outreach, meet with prospective partners, and perform the administrative work necessary to grow the organization.

6. Defendant Saint Patrick Center is, upon information and belief, a Missouri nonprofit corporation operating homeless and social services programs, including meal services, at 800 North Tucker Boulevard, St. Louis, Missouri 63101. Upon information and belief, SPC receives federal financial assistance, including funding administered through the U.S. Department of Housing and Urban Development ("HUD") Continuum of Care program, and is therefore subject to the federal civil rights statutes referenced herein.

7. Defendant Catholic Charities of St. Louis is, upon information and belief, a Missouri nonprofit corporation that operates, governs, supervises, or is affiliated with Saint Patrick Center as part of its Human Services Division, and exercised oversight authority over the policies and personnel decisions at issue in this Complaint.

8. Defendant Stephanie Blakley is, upon information and belief, the Director of Quality – Human Services at Saint Patrick Center, and at all relevant times acted under color of authority delegated by SPC and Catholic Charities. She is sued in both her individual and official capacities.

9. Defendant Walter (last name presently unknown to Plaintiff, who has formally requested this information from SPC and reserves the right to amend this Complaint upon receipt) is, upon information and belief, a supervisor at Saint Patrick Center, and at all relevant times acted under color of authority delegated by SPC and Catholic Charities. He is sued in both his individual and official capacities.

10. Defendant Jay (last name presently unknown to Plaintiff, who has formally requested this information from SPC and reserves the right to amend this Complaint upon receipt) is, upon information and belief, a frontline staff member at Saint Patrick Center, and at all relevant times acted under color of authority delegated by SPC and Catholic Charities. He is sued in both his individual and official capacities.

## III. JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act.

12. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy as Plaintiff's federal claims and form part of the same nucleus of operative fact.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside and conduct business in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in the City of St. Louis, Missouri, within the Eastern District of Missouri.

14. This action is properly assigned to the Eastern Division of this District because the events at issue occurred in the City of St. Louis.

## IV. FACTUAL ALLEGATIONS

### A. Background

15. Plaintiff is an unhoused individual who relies on Saint Patrick Center's meal services as his sole reliable source of a hot, nutritious daily meal. No comparable alternative exists: food stamp benefits do not provide access to prepared hot meals and are insufficient to meet daily nutritional needs without cooking facilities; sporadic community food distributions are neither daily nor reliable; and no other St. Louis homeless services provider offers Plaintiff consistent daily hot meal access equivalent to SPC's program. SPC's meal services are therefore irreplaceable as Plaintiff's primary means of daily sustenance.

16. Plaintiff is a pro se litigant with three active federal civil rights cases pending in this District: Case Nos. 4:26-cv-00608, 4:26-cv-00665, and 4:26-cv-00831, each involving claims of disability discrimination, retaliation, and civil rights violations by St. Louis-area homeless services providers and municipal actors.

17. In addition to his litigation, Plaintiff has been actively building Urban Reparations LLC, including conducting media outreach to St. Louis news organizations and identifying and pursuing grant and funding opportunities for the organization. This work requires Plaintiff to maintain the physical stamina, stable daily routine, and uninterrupted access to subsistence resources necessary to travel to meetings, draft materials, and meet deadlines. Defendants' denial of Plaintiff's primary daily food source directly impaired Plaintiff's capacity to carry out this work during the period of the suspension.

18. Approximately one year prior to the events described herein (estimated June–July 2025), Plaintiff filed a formal grievance against SPC staff arising from discriminatory treatment based

on his gender identity, including disrespectful comments made about his gender identity by staff in the Welcome Center. This grievance establishes a documented prior pattern of discriminatory conduct directed at Plaintiff by SPC personnel.

**B. June 10, 2026 – Denial of Promised Assistance and Disparaging Statement**

19. On June 10, 2026, Plaintiff was instructed by SPC staff to return at 1:00 p.m. to receive assistance obtaining dress clothing for a business meeting with a realtor. Defendant Jay confirmed he would provide this assistance.

20. At 1:00 p.m., Jay refused to provide the promised assistance, stating he "didn't have time," and no other staff member would assist Plaintiff despite the prior instruction.

21. Jay further stated that Plaintiff should be "happy he is even assisting me due to my previous track record." This statement was false: Plaintiff has never received an incident report, write-up, warning, sanction, or any disciplinary action at SPC. Plaintiff alleges this fabricated statement reflects discriminatory animus connected to Plaintiff's gender identity and prior protected grievance activity.

**C. June 11, 2026 – Plaintiff's Protected Report of Misconduct to Supervisor Walter**

22. On June 11, 2026, Plaintiff returned to SPC and reported the prior day's misconduct to Defendant Walter, explicitly stating that his purpose was to resolve the matter internally and to prevent escalation to legal action. This statement constitutes protected activity under 42 U.S.C. § 1983, the ADA's anti-retaliation provision (42 U.S.C. § 12203), the Missouri Human Rights Act (Mo. Rev. Stat. § 213.070), and HUD's Non-Retaliation Standards (24 C.F.R. § 5.110).

23. Because Jay was present during this conversation, Plaintiff stated, "I have it on my phone," to convey the seriousness of his complaint. Plaintiff did not record anything; he had the relevant facts memorized.

24. Walter did not investigate Plaintiff's complaint, did not separate Jay (the accused) from the conversation, did not ask what had occurred, and did not treat Plaintiff's statement as a policy violation. Walter stated only that he would "schedule a time to talk" and directed Plaintiff to go upstairs and eat lunch, which Plaintiff did without incident.

25. Walter's conduct on June 11, 2026 violated basic grievance-confidentiality standards by permitting the accused staff member to remain present during Plaintiff's complaint, and constituted a failure to investigate, a failure to follow up, and a failure to protect Plaintiff from foreseeable retaliation.

**D. June 12, 2026 – Retaliatory 90-Day Suspension Without Due Process**

26. On June 12, 2026, less than twenty-four hours after Plaintiff's protected complaint, Walter and Jay pulled Plaintiff aside and informed him that he was banned for ninety (90) days from meal services and Shamrock classes.

27. The stated justifications, delivered orally, were: "You secretly recorded staff"; "It's a HIPAA violation"; "Just saying it has consequences"; and Jay's comparison of Plaintiff's statement to "making a bomb threat."

28. These justifications were legally false. The Health Insurance Portability and Accountability Act, 45 C.F.R. § 160.103, applies exclusively to covered entities—health plans, healthcare clearinghouses, and healthcare providers transmitting health information electronically—and imposes no obligations on clients. SPC's meal services do not constitute HIPAA-covered functions, no protected health information was at issue, and in any event Plaintiff made no recording. Moreover, Missouri is a one-party consent state, Mo. Rev. Stat. § 542.402, and Plaintiff, as a party to any conversation with SPC staff, would have had the legal right to record it even had a recording occurred.

29. Plaintiff informed Walter and Jay that the loss of meal access would leave him without a hot, nutritious daily meal for the entire 90-day period, as no equivalent alternative exists for an unhoused individual without cooking facilities. Defendants acknowledged this and offered only a single "snack lunch" for that day, with nothing thereafter—a token gesture that does not constitute a nutritional equivalent to the daily hot meal service from which Plaintiff was suspended.

30. Plaintiff was not provided any of the following, each of which constitutes a baseline element of procedural due process and SPC's own grievance standards: written notice of suspension; an incident report; identification of the policy allegedly violated; the applicable sanction range; an opportunity to be heard or to make a statement; identification of the decision-maker, their authority, or the evidentiary basis for the decision; or any defined appeal process.

31. When Plaintiff requested documentation, Jay falsely claimed that Plaintiff had "refused" it, then admitted the documentation had not yet been typed—an admission that is logically and factually irreconcilable with the claim of refusal, since no document existed to refuse. Jay threatened to call law enforcement if Plaintiff did not leave the sidewalk area outside the Center.

32. Walter stated that the suspension was "out of his hands" but identified no decision-maker, no authority, and no evidentiary basis, and took no action to intervene on Plaintiff's behalf despite having received Plaintiff's complaint against Jay the day before.

33. Jay, the subject of Plaintiff's complaint, was permitted to directly participate in delivering the disciplinary action against Plaintiff, a facial conflict of interest that violates basic grievance-handling standards, HUD's Non-Retaliation Standards, and the ADA's anti-retaliation provisions.

34. Both Walter and Jay refused to provide their full legal names to Plaintiff despite his explicit statement that he required this information for purposes of legal action, further obstructing Plaintiff's ability to pursue redress and document the responsible parties.

**E. June 16, 2026 – Obstruction of Grievance Filing and Production of a Fabricated, Backdated Suspension Letter**

35. On June 16, 2026, at approximately 11:30 a.m., Plaintiff entered the SPC Welcome Center for the sole purpose of submitting a formal written grievance regarding the June 10–12, 2026 incidents—itself a protected activity.

36. Jay ran toward the service window and loudly declared, in the hearing of other clients and staff, "You're trespassing," "You need to leave," and "We're calling the police." Jay refused to accept Plaintiff's written grievance, stating, "No one in there knows where it goes," and "I can't take it if it's against me."

37. Jay then directed Plaintiff to the Administration Office while contacting administrative personnel internally to intercept him. Upon Plaintiff's arrival at that office, an administrative representative produced a pre-prepared written suspension letter purporting to be dated June 12, 2026.

38. This letter is facially fraudulent and procedurally void for the following independent reasons: (a) it is backdated—no written notice existed on June 12, 2026, as confirmed by Jay's own admission that day that documentation had not yet been typed, and Plaintiff did not receive any document until June 16, 2026, a fact independently corroborated by a timestamped scan Plaintiff made at the St. Louis Public Library that day; (b) it bears an anonymous staff signature with no printed name, title, or identifying information, foreclosing identification of the decision-maker; (c) the "Client Signature" line is blank, and Plaintiff never signed or acknowledged the letter; and (d) it cites a "Video Recording Policy" by name only, without

policy number, section, governing language, or sanction range, and without any showing that such a policy was ever disclosed or made accessible to Plaintiff.

39. The stated justification for the suspension materially shifted across the relevant period: on June 12, 2026, staff orally cited an alleged HIPAA violation arising from an alleged audio/phone recording; by June 16, 2026, the written letter instead cited an entirely different "Video Recording Policy," a policy never previously mentioned by any SPC staff member at any point in the underlying events, and which describes conduct (video recording) that no one—not Jay, not Walter, not Plaintiff—ever referenced. Plaintiff alleges that this shift in rationale, following the legal unavailability of the HIPAA justification, constitutes direct evidence of pretext under controlling retaliation jurisprudence.

40. The timing of the letter's production—appearing only once Plaintiff arrived to file a formal grievance, having been admittedly nonexistent four days earlier—demonstrates that the document was generated in anticipation of, and specifically to obstruct, Plaintiff's protected grievance-filing activity, and constitutes administrative fraud and falsification of records under Missouri law.

## F. June 18, 2026 – Denial of Interim Relief by Director Stephanie Blakley

41. On June 18, 2026, Plaintiff submitted a written request to Defendant Blakley, Director of Quality – Human Services at SPC, seeking immediate reinstatement of meal access, citing his unhoused status and lack of any alternative source of a consistent hot, nutritious daily meal. Plaintiff further provided written notice that, absent reinstatement within seven days, he would pursue legal action for discrimination and retaliation.

42. Blakley responded the same day, stating she was "not at liberty to speak on the determination at this time," that the matter was "still under review," and recommending Plaintiff seek meals from outside food pantries. Blakley's response provided no specific date for resolution, did not acknowledge the urgency of Plaintiff's documented nutritional deprivation and lack of hot meal access, did not dispute Plaintiff's position that the suspension was unlawful, and did not address Plaintiff's seven-day notice of intent to pursue legal action.

43. Plaintiff alleges that Blakley's refusal to provide any interim relief to an unhoused individual whom SPC knew to have no alternative source of a consistent hot, nutritious daily meal, issued in direct response to a renewed assertion of Plaintiff's legal rights, constitutes a continuation of the same retaliatory course of conduct originating with the June 12, 2026 suspension and the June 16, 2026 obstruction of Plaintiff's grievance filing.

### G. June 19–20, 2026 – Continued Obstruction

44. On June 19, 2026, Plaintiff submitted a formal executive grievance specifically addressing Walter's supervisory failures, including his failure to maintain confidentiality, his failure to investigate, and his facilitation of retaliation.

45. On June 20, 2026, Plaintiff submitted a formal written request to SPC leadership for the full legal names and titles of Walter and Jay, necessary to identify the responsible parties for purposes of this litigation. As of the filing of this Complaint, Plaintiff has not received a response.

46. As of the date of this Complaint, Plaintiff remains banned from SPC meal services, has received no written policy citation, no documentation, and no identification of the decision-maker responsible for the suspension, and continues to suffer the direct effects of nutritional deprivation and denial of hot daily meal access as an unhoused individual without cooking facilities or a reliable equivalent alternative.

## V. CAUSES OF ACTION

### COUNT I — First Amendment Retaliation (42 U.S.C. § 1983) (Against Walter, Jay, and Blakley in Their Individual Capacities)

47. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48. Plaintiff's reports of staff misconduct to Walter on June 11, 2026, his attempted filing of a formal grievance on June 16, 2026, and his renewed assertion of his rights on June 18, 2026, each constituted speech and petitioning activity protected by the First Amendment to the United States Constitution.

49. Defendants Walter, Jay, and Blakley acted under color of state law within the meaning of 42 U.S.C. § 1983. A private party constitutes a state actor under any of four established tests: (1) the "close nexus" test, where there is a sufficiently close nexus between the state and the challenged action such that the action may fairly be treated as that of the state itself, Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); (2) the "symbiotic relationship" test, where the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity, Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961); (3) the "joint action" test, where a private party is a willful participant in joint action with the State or its agents, Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982); and (4) the "public function" test, where a private party has been delegated a

power traditionally reserved to the State. Plaintiff alleges state action under multiple theories. First, SPC's operations are substantially funded through the HUD Continuum of Care program and other federal and municipal sources, and SPC implements programs that are integral to the City of St. Louis's publicly-funded homeless services system—establishing a symbiotic relationship in which the government and SPC are so intertwined that SPC's disciplinary decisions in administering those programs must fairly be treated as state action. Second, SPC and the individual Defendants acted jointly with state and municipal actors in implementing publicly funded shelter and meal-service programs subject to HUD regulatory oversight, satisfying the joint action test. Third, the provision of emergency shelter and subsistence meal services to the unhoused population—a function historically undertaken by state and local governments—satisfies the public function test. See also Pinsky v. Duncan, 79 F.3d 306 (2d Cir. 1996) (recognizing state action by federally-funded social services providers). Plaintiff further alleges that, to the extent any individual Defendant is found not to satisfy the state action requirement under § 1983, all federal statutory claims (ADA, Section 504, ACA § 1557) independently apply without any state action requirement.

50.  Defendants took adverse action against Plaintiff—including the 90-day suspension from meal services, the threats of police involvement, the fabrication and backdating of disciplinary documentation, and the denial of interim relief—that would deter a person of ordinary firmness from engaging in further protected activity.

51.  A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions, as demonstrated by the temporal proximity of less than twenty-four hours between Plaintiff's June 11 complaint and the June 12 suspension, the direct involvement of the accused individual (Jay) in issuing the discipline, the shifting and pretextual justifications offered for the suspension, and the fabrication of backdated documentation specifically timed to coincide with Plaintiff's attempt to file a formal grievance.

52.  As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer damages, including loss of essential hot daily meal services, nutritional deprivation, emotional distress, and interference with his constitutional rights.

**COUNT II — Retaliation in Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, 12203 (Against SPC and Catholic Charities)**

53.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54.  Plaintiff is a qualified individual with disabilities within the meaning of 42 U.S.C. § 12102, having been diagnosed with hip dysplasia, a physical impairment substantially limiting

walking, standing, and mobility, and bipolar disorder, a mental impairment substantially limiting brain function, concentration, and mood regulation. Title II of the ADA prohibits discrimination against qualified individuals with disabilities in the services, programs, and activities of public entities, and 42 U.S.C. § 12203 independently prohibits retaliation against any individual because he has opposed any act or practice made unlawful by the ADA or because he has made a charge or participated in any manner in an investigation or proceeding under the ADA. The § 12203 anti-retaliation provision protects Plaintiff regardless of whether the underlying conduct constitutes a Title II violation, and applies to any individual who engages in protected opposition activity—not only to individuals with disabilities.

55. Plaintiff engaged in protected activity by reporting staff misconduct and asserting his rights to fair treatment and non-discriminatory services. Defendants retaliated against Plaintiff through the 90-day suspension, the fabricated disciplinary documentation, and the denial of interim relief, each of which would dissuade a reasonable person from engaging in protected activity.

56. As a direct and proximate result, Plaintiff has suffered damages as described herein.

## COUNT III — Retaliation in Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Against SPC and Catholic Charities)

57. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Upon information and belief, SPC and Catholic Charities receive federal financial assistance and are therefore subject to Section 504's prohibition on discrimination and retaliation against individuals with disabilities who oppose discriminatory practices or assert their rights under the statute. Plaintiff is an individual with disabilities within the meaning of 29 U.S.C. § 705(20), having been diagnosed with hip dysplasia and bipolar disorder, each of which constitutes a physical or mental impairment that substantially limits one or more major life activities. Section 504 independently prohibits retaliation against Plaintiff for his protected complaints regardless of whether Defendants' underlying conduct constitutes direct discrimination under the statute.

59. Defendants' conduct in suspending Plaintiff from essential services, fabricating disciplinary documentation, and denying interim relief in direct response to Plaintiff's protected complaints constitutes unlawful retaliation under Section 504.

60. As a direct and proximate result, Plaintiff has suffered damages as described herein.

**COUNT IV — Sex and Gender Identity Discrimination in Violation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 (Against SPC and Catholic Charities)**

61. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62. Plaintiff is a transgender man. Discrimination on the basis of gender identity constitutes sex discrimination under federal law. See Bostock v. Clayton County, 590 U.S. 644 (2020). Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116, prohibits discrimination on the basis of sex—including gender identity—in any health program or activity that receives federal financial assistance. SPC receives federal financial assistance through the HUD Continuum of Care program and related federal homeless-services funding, and its programs constitute a health program or activity within the meaning of § 1557 to the extent they include health-related supportive services. Alternatively, and independently, the Missouri Human Rights Act and the Fair Housing Act provide parallel prohibitions on sex and gender-identity discrimination applicable to SPC's programs.

63. Plaintiff was subjected to a prior grievance-worthy pattern of gender-identity-based mistreatment at SPC approximately one year before the events at issue, and the conduct described herein—including the fabricated "track record" statement, the disproportionate and retaliatory response to Plaintiff's protected complaint, and the denial of promised services—is consistent with and continues that pattern of discriminatory treatment based on Plaintiff's gender identity.

64. As a direct and proximate result, Plaintiff has suffered damages as described herein.

**COUNT V — Violation of HUD Equal Access and Non-Retaliation Standards, 24 C.F.R. § 5.110 (Against SPC and Catholic Charities)**

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Upon information and belief, SPC receives funding through HUD's Continuum of Care program and is accordingly bound by HUD's Equal Access and Non-Retaliation Standards, which prohibit retaliation against individuals who raise complaints within federally supported homeless-services settings.

67. Defendants' conduct as described herein violates these standards and supports Plaintiff's claims for declaratory and injunctive relief, and informs the standard of care applicable to Defendants' conduct for purposes of Plaintiff's other claims.

**COUNT VI — Retaliation and Discrimination in Violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq. (Against All Defendants)**

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. The Missouri Human Rights Act prohibits discrimination on the basis of sex, which includes gender identity, in places of public accommodation, and independently prohibits retaliation against any person who has opposed any practice prohibited by the Act, pursuant to Mo. Rev. Stat. § 213.070.

70. SPC operates a place of public accommodation within the meaning of the Act. Defendants' conduct as described herein constitutes both unlawful discrimination on the basis of gender identity and unlawful retaliation for protected activity in violation of the Act.

71. As a direct and proximate result, Plaintiff has suffered damages as described herein, entitling him to all remedies available under the Act, including compensatory and punitive damages and attorneys' fees and costs.

**COUNT VII — Common Law Fraud and Fraudulent Misrepresentation (Against SPC, Catholic Charities, Walter, and Jay)**

72. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

73. Defendants represented, through the suspension letter produced on June 16, 2026, that the document had been issued on June 12, 2026, and that Plaintiff had violated a "Video Recording Policy."

74. These representations were false. The document did not exist on June 12, 2026, as confirmed by Jay's own contemporaneous admission that the documentation had not yet been typed, and no "Video Recording Policy" was ever cited, described, or invoked by any SPC staff member at any point during the June 10–12, 2026 events, which instead centered exclusively on an alleged (and legally inapplicable) HIPAA violation.

75. Defendants knew these representations were false, or made them with reckless disregard for their truth, at the time the backdated letter was produced and presented to Plaintiff.

76. Defendants intended that Plaintiff and any reviewing authority rely on the backdated letter as authentic contemporaneous documentation of a properly issued suspension.

77. Plaintiff has been and will be damaged by this fraudulent conduct, including by the continued and ongoing deprivation of meal services premised on a fraudulent instrument, and by the

resulting impairment of Plaintiff's ability to challenge the suspension through legitimate administrative channels.

**COUNT VIII — Procedural Due Process Violation (42 U.S.C. § 1983) (Against Walter, Jay, and Blakley in Their Individual Capacities)**

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiff possessed a protected property and liberty interest in continued access to publicly funded meal services upon which he depended for daily subsistence as an unhoused individual. The Fourteenth Amendment's Due Process Clause protects against deprivation of life, liberty, or property without adequate procedural safeguards. Where an individual demonstrates a legitimate claim of entitlement to a government benefit—particularly one necessary for basic survival—that interest is protected. Goldberg v. Kelly, 397 U.S. 254 (1970) (procedural due process required before termination of welfare benefits upon which recipients depend for subsistence). Plaintiff's access to SPC's daily hot meal program, funded through HUD Continuum of Care and other public sources, constitutes precisely such an interest. SPC's meal service is Plaintiff's sole reliable source of a hot, nutritious daily meal: food stamp benefits do not provide access to prepared hot meals and cannot substitute for a daily hot meal program for an individual without cooking facilities; sporadic community food distributions are neither daily, reliable, nor nutritionally equivalent; and no other St. Louis provider offers Plaintiff comparable consistent daily hot meal access. The adequacy of the process due is measured by the three-factor test established in Mathews v. Eldridge, 424 U.S. 319 (1976): (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the government's interest. Here, all three factors weigh decisively in Plaintiff's favor: (1) his interest is extraordinary—a consistent hot, nutritious daily meal as an unhoused individual without cooking facilities and with no reliable equivalent alternative; (2) the risk of erroneous deprivation was severe and was in fact realized, as demonstrated by the shifting and legally false justifications, the absence of any investigation, and the fabricated backdated documentation; and (3) SPC's administrative burden in providing basic notice and a hearing opportunity before imposing a 90-day ban is minimal. Defendants deprived Plaintiff of this interest without constitutionally adequate process—without written notice, without an opportunity to be heard prior to or promptly after the suspension, without identification of the decision-maker or the evidentiary basis for the decision, without providing the policy allegedly violated, and without any defined appeal mechanism—in violation of the Due Process Clause of the Fourteenth Amendment.

80. As a direct and proximate result, Plaintiff has suffered damages as described herein.

**COUNT IX — Spoliation of Evidence / Demand for Preservation and Adverse Inference**
**(Against SPC and Catholic Charities)**

81. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

82. Plaintiff has placed Defendants on formal written notice to preserve all surveillance footage, security camera recordings, and related records concerning the events of June 10–12 and June 16, 2026. Should Defendants fail to preserve this evidence, Plaintiff will seek an adverse inference instruction and appropriate sanctions from this Court.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

- A declaratory judgment that Defendants' conduct as described herein violated 42 U.S.C. § 1983, the First and Fourteenth Amendments, Title II of the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, Title IX, HUD's Non-Retaliation Standards, and the Missouri Human Rights Act;

- A temporary restraining order and preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, immediately reinstating Plaintiff's access to SPC meal services and Shamrock classes pending resolution of this action, on the grounds that: (a) Plaintiff is substantially likely to succeed on the merits of his First Amendment retaliation and due process claims; (b) Plaintiff is suffering irreparable harm in the form of ongoing deprivation of his sole reliable source of a hot, nutritious daily meal—an unhoused individual without cooking facilities for whom food stamp benefits and sporadic community distributions are not a nutritional equivalent; (c) the balance of equities tips sharply in Plaintiff's favor, as Defendants suffer no cognizable harm from reinstating meal access they suspended without adequate process; and (d) the public interest favors enforcement of constitutional rights and protection of unhoused individuals from retaliatory denial of subsistence services;

- An order requiring Defendants to expunge the June 12, 2026 suspension and all related disciplinary records from Plaintiff's file;

- An order requiring Defendants to preserve all evidence as described herein and to produce the full legal names, titles, and personnel records of Walter, Jay, and any other individual involved in the decisions described herein;

- Compensatory damages in an amount to be determined at trial, including but not limited to damages for nutritional deprivation and denial of hot daily meal access, emotional distress, interference with Plaintiff's civil rights and ongoing litigation, and lost business income, lost prospective economic advantage, and other economic harm to Urban Reparations LLC proximately caused by Defendants' conduct;

- Punitive damages against the individual Defendants to the extent permitted by law, in an amount sufficient to punish and deter the conduct described herein;
- Nominal damages;
- Reasonable costs and, to the extent permitted given Plaintiff's pro se status, fees;
- Pre-judgment and post-judgment interest as allowed by law; and
- Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION

I, Jamal Fraction, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

Jamal Fraction, Pro Se Plaintiff

Unhoused

St. Louis, Missouri

Telephone: (557) 234-9236

Email: fractionjamal6@gmail.com

Date: 6/22/26